UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: **SEP 3 0 2019**

---

Uriel Vazquez Perez,
on his own behalf and on behalf of others similarly
situated,

                    Petitioner-Plaintiff,

        —v—

Thomas Decker, *et al.*,

                    Respondents-Defendants.

---

18-cv-10683 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Petitioner-Plaintiff Uriel Vazquez Perez brings this class petition for habeas corpus relief

and class complaint against Respondents-Defendants Thomas Decker, in his official capacity as

New York Field Office Director for U.S. Immigration and Customs Enforcement ("ICE"), and

others[1], alleging that ICE's practice of failing to provide initial appearances before an

Immigration Judge for up to several months after arrest violates the Constitution, as well as the

Administrative Procedure Act. He seeks declaratory and injunctive relief to end this allegedly

illegal practice. Now before the Court is Vazquez Perez's motion for preliminary declaratory

and injunctive relief. The Court concludes that Congress has stripped it of jurisdiction to issue

the requested injunctive relief on a classwide basis. However, that jurisdiction-stripping

provision does not preclude the Court from issuing a declaratory judgment. Nevertheless,

---

[1] Vazquez Perez also sues the following: Ronald D. Vitiello, then acting director for ICE; Kristjen Nielsen, then
Secretary of the Department of Homeland Security; James McHenry, Director of the Executive Office of
Immigration Review; Matthew G. Whitaker, then Acting Attorney General; the Department of Homeland Security;
ICE; the Department of Justice; the Executive Office of Immigration Review; and Carl E. DuBois, Sheriff of Orange
County and the official in charge of the Orange County Correctional Facility. All individuals are sued in their
official capacities.

because as a procedural matter the Court sees no basis for doing so on a *preliminary* basis, this pending motion for preliminary injunctive and declaratory relief is DENIED.

## I.     BACKGROUND

### A. General Factual Background

The pertinent facts of this case are undisputed unless otherwise noted and are drawn from the parties' submissions on Vazquez Perez's motion.

The immigration laws authorize immigration officials to charge individuals as removable, arrest individuals subject to removal, and then detain them pending removal proceedings. *See Demore v. Kim*, 538 U.S. 510, 523-26 (2003). As relevant here, 8 U.S.C. § 1226 authorizes detention of any individual in removal proceedings and requires detention in some cases. *Compare* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.") *with id.* § 1226(c) ("The Attorney General shall take into custody any alien who" falls into any of four categories). Following arrest, ICE officers may release an individual detained pursuant to § 1226(a) if she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that [she] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). Regulations provide that such determinations will be made within 48 hours of arrest, "except in the event of an emergency or other extraordinary circumstance in which case a determination will be made within an additional reasonable period of time." 8 C.F.R. § 287.3(d). Determinations on removability and custody are made by ICE and recorded in the Notice to Appear ("NTA"), which is the charging document in the removal proceedings, and the Form I-286, respectively. Both are subsequently served on the detainee.

ICE is a subcomponent of the Department of Homeland Security that is responsible for arresting, jailing, and prosecuting individuals in removal proceedings, which are adjudicated by the immigration courts. *See* Dkt. No. 69 ¶ 4. Individuals who are arrested by ICE's New York Field Office and detained are placed in civil removal proceedings at the New York City Immigration Court at 201 Varick Street in Manhattan ("Immigration Court"), which maintains a detained docket. Dkt. No. 53-1 ¶ 23; Dkt. No. 67 ¶ 16. The Immigration Court obtains jurisdiction over removal proceedings when an ICE officer files the NTA. 8 C.F.R. § 1003.14(a). While awaiting their initial appearance before the Immigration Judge, individuals are detained in criminal jails pursuant to a contract with ICE to house immigration detainees. Dkt. No. 53-1 ¶ 8.

The initial appearance, also known as the initial master calendar hearing, is the first substantive step in the removal proceedings. The initial master calendar hearing is typically an individual's first opportunity to appear before an Immigration Judge. At the initial master calendar hearing, the Immigration Judge (a) provides the detainee with information in a language she understands, Dkt. No. 53-11 at 12–13; (b) describes in plain language the nature of the proceedings and the allegations and charges in the NTA, 8 C.F.R. § 1240.10(a)(6); (c) reviews the NTA for defects and ensures proper service has been effectuated, Dkt. No. 53-11 at 2–3; (d) notifies the individual of her right to retain private counsel and of available *pro bono* legal services, 8 C.F.R. §§ 1240.10(a)(1), (2); (e) has an initial opportunity to assist the individual in identifying defenses to deportation, 8 C.F.R. § 1240.11(a)(2); (f) advises the individual of her rights to examine and object to the evidence against her, cross-examine government witnesses, and present evidence on her own behalf, 8 C.F.R. § 1240.10(a)(4)); and (g) observes the individual to determine if there are "any indicia of incompetency," triggering the judge's

3

obligation to "take measures to determine whether [the individual] is competent to participate in proceedings" and to explore safeguards, *Matter of M-A-M*, 25 I. & N. Dec. 474, 480 (B.I.A. 2011). *See generally* Dkt. No. 53-3 ¶¶ 10, 14; *see also* Dkt. No. 67 ¶ 12–13. These hearings are also typically the first opportunity for indigent individuals to seek pro bono legal representation from the New York Immigrant Family Unity Project, which provides free removal defense counsel to all indigent detained individuals. Dkt. No. 53-1 ¶ 10. Furthermore, they present the first opportunity for the Immigration Judge to review ICE's custody determinations and possibly release eligible individuals on bond. Dkt. No. 53-3 ¶¶ 13–14; Dkt. No. 53-1 ¶¶ 20, 22; Dkt. No. 67 ¶ 15. Though ICE makes an initial custody determination following arrest, Vazquez Perez presents evidence that, since 2016 until the time of filing of the motion for preliminary injunctive or declaratory relief, ICE's New York Field Office operated under a "no bond" policy and issued bond in none of its cases. Dkt. No. 53-1 ¶ 14. Respondents counter that the frequent denial of discretionary release is the result of the fact that a large percentage of ICE arrests are predicated on an individual's encounter with law enforcement. Dkt. No. 69 ¶ 11.

The parties agree that there have been significant delays between an individual's arrest and the initial master calendar hearing over the last few years.[2] In 2014, the median wait time between arrest and initial master calendar hearing was 11 days, Dkt. No. 53-7 ¶ 5(a), but by 2017, the median wait time had increased to 42 days, *id.* ¶ 5(d). From August to October 2018, the median wait time was over 80 days, *id.* ¶ 5(l)–(n), and over a third of those arrested in that period waited more than three months for their initial master calendar hearing, *id.* ¶ 6.

---

[2] The parties use both average and median wait times throughout their briefings. For consistency's sake, the Court uses only median wait time figures throughout this Opinion and Order. In addition, Respondents report wait times between arrest and filing of the NTA and filing of the NTA and the initial master calendar hearing separately. Accordingly, when discussing Respondents' median wait time figures in this Opinion and Order, the Court will note both the median wait time between filing of the NTA and the initial master calendar hearing and the average wait time between arrest and filing of the NTA for the relevant period and aggregate the two where possible.

Respondents attribute these delays to "a steadily increasing caseload over the past few years, a lack of resources to face the increased demands, and management and staffing challenges." Dkt. No. 71 at 14.

Since August 2018, however, the Executive Office for Immigration Review, which oversees the immigration courts, has taken measures to address these ballooning wait times, including, among others, improving case tracking efforts, moving initial master calendar hearings to the mornings to allow for more time to complete them, and adding new courtrooms and judges. *See generally* Dkt. No. 71 at 15–21. It also put into place a 21-day policy, calling for all initial master calendar hearings to be held within 21 days of the Immigration Court's receipt of the NTA, *see* Dkt. No. 67 ¶ 34, to be reduced to a 17-day policy by February or March 2019, *see id.* ¶ 45–46; Dkt. No. 85-1 ¶ 7.

Respondents offer evidence that wait times have decreased substantially in response to these efforts. For initial master calendar hearings held in January 2019, the median wait time between the filing of the NTA and initial master calendar hearing was 31 days, a number that decreased to 14 days in February 2019. Dkt. No. 116-3 ¶ 5. These numbers do not, however, include the wait time between arrest and filing of the NTA, which Respondents did not provide for these months. The median wait time between filing of the NTA and initial master calendar hearing declined again to a median of 10 days in March 2019, or a total of roughly 13 days between arrest and initial master calendar hearing once the roughly three-day delay between arrest and filing of the NTA is accounted for. *See id.*; *see also* Dkt. No. 116-1 ¶ 2. The trend reversed in April, when the median wait time between arrest and initial master calendar hearing increased to 20 days, including the roughly three-day delay between arrest and filing of the NTA that month. *See* Dkt. No. 116-3 ¶ 5; Dkt. No. 116-1 ¶ 3. Wait times further increased in May

2019 to a median of 21 days between arrest and initial master calendar hearing, again including the roughly three-day delay between arrest and filing of the NTA that month. *See* Dkt. No. 116-3 ¶ 5; Dkt. No. 116-1 ¶ 4. For June and July 2019, the most recent months for which the Court has been provided complete data, median wait times were between 14–15 days and 15–16 respectively, after factoring in the 3–4 day delay between arrest and filing of the NTA for those months. *See* Dkt. No. 123-3 ¶ 8; Dkt. No. 123-1 ¶¶ 2–3.

### B. Facts Specific to Vazquez Perez

Vasquez Perez is a citizen of Mexico who came to the United States about twenty years ago and has lived in Westchester County ever since. Dkt. No. 53-16 ¶ 2. At the time this motion was filed, he was living in White Plains, New York, with his wife and two sons. *Id.* ¶ 1. Over the years, he has worked jobs in landscaping and restaurant businesses to support his family. *Id.* ¶ 3. On October 7, 2018, Vazquez Perez was arrested by New York State Police. Dkt .No. 70 ¶ 6. On October 30, 2018, he was arrested by ICE and served with an NTA. *Id.* ¶ 7. The NTA notified him that ICE had determined that it would detain him while his removal proceedings were pending and that he could seek review of his custody determination by an Immigration Judge. *Id.* The NTA also informed him that a hearing before an Immigration Judge was scheduled for November 15, 2018. Dkt. No. 53-16 ¶ 6. However, the NTA was not filed at the Immigration Court, and thus removal proceedings were not initiated, until November 16, 2018, over two weeks after his arrest and a day after his scheduled initial master calendar hearing. Dkt .No. 70 ¶ 7. Vazquez Perez ultimately appeared with counsel for an initial master calendar hearing on November 28, 2018 and was granted release on bond, which he posted on November 30, 2018. *Id.* ¶ 8–9. Vazquez Perez's removal proceedings remain pending.

## C. Procedural Background

Vasquez Perez filed this class petition for a writ of habeas corpus and class complaint for declaratory and injunctive relief on November 15, 2018. Dkt. No. 1. At the same time, he also filed a motion to certify a class of "[a]ll individuals who are, have been, or will be arrested by ICE's NYFO and detained under 8 U.S.C. § 1226 for removal proceedings before an immigration judge, and who have not been provided an initial hearing before an immigration judge." Dkt. No. 3.

On December 5, 2018, before Respondents responded to either the petition/class complaint or the class certification motion, Vazquez Perez filed a motion for preliminary injunctive and declaratory relief, moving the Court to "preliminarily declar[e] that [Respondents'] practice of detaining putative class members for extended periods without providing prompt access to an immigration judge is unlawful and enjoin[ Respondents] from detaining putative class members without providing them a prompt and meaningful opportunity to challenge their detention and removal before an immigration judge." Dkt. No. 50. Oral argument was held on the motion for preliminary injunctive and declaratory relief on April 8, 2019, and supplemental briefing was subsequently ordered on issues that arose at that argument. *See* Dkt. No. 96. Following submissions of supplemental briefing, the motion for preliminary injunctive and declaratory relief was fully briefed on July 2, 2019. Dkt. No. 117. Respondents have also continued to provide this Court with updated data on wait times between arrest and initial master calendar hearing at the Immigration Court throughout this litigation, most recently on September 4, 2019. *See* Dkt. Nos. 85, 116, 123.

Respondents have yet to file an opposition to the motion for class certification. At the April 8 oral argument, the Court raised this with Respondents, and they expressed a willingness

7

to stipulate, for purposes of the motion for preliminary injunctive or declaratory relief, to "conditional or preliminary certification of the class." Dkt. No. 96 at 65. At the conclusion of oral argument, the Court directed counsel for Respondents to confer with counsel for Vazquez Perez regarding briefing on the class certification motion, *see id.* at 67, 83, and it noted that "in the absence of a stipulation" to conditional or preliminary certification of the class, it would "need briefing." *Id.* at 83. As of the date of this Opinion and Order, the Court has not received any briefing from Respondents on that motion, and—in light of Respondents' expressed willingness to stipulate to conditional or preliminary certification—it construes the decision not to file an opposition as a stipulation to the conditional certification of the putative class for purposes of the motion for preliminary injunctive or declaratory relief that is now before the Court. *See, e.g., Strouchler v. Shah*, 891 F. Supp. 2d 504, 517 (S.D.N.Y. 2012) ("[T]he 'court may conditionally certify the class or otherwise award a broad preliminary injunction, without a formal class ruling, under its general equity powers.'" (quoting Conte & Newberg, Newberg on Class Actions § 9:45 (4th ed. 2002))).

## II.   DISCUSSION

As a threshold matter, the Court must determine whether it has jurisdiction to enter the relief Vazquez Perez requests here. It is thus important to pinpoint the exact relief he seeks, which has shifted throughout this litigation. In his supplemental briefing, Vazquez Perez clarifies that he seeks either "an order that the government must hold initial master calendar hearings for each member of the putative class within 7 to 10 days of arrest by Immigration and Customs Enforcement . . . *and* a declaration that the government's ongoing and years-long practice of routinely delaying initial master calendar hearings beyond 10 days violates the Due Process Clause and the Administrative Procedure Act," or, in the alternative, "only the

declaration." Dkt. No. 107 at 1 (emphasis added). For the reasons stated below, the Court finds that it cannot grant any of Vazquez Perez's requested relief at this juncture.

### A. Section 1252(f)(1) Strips the Court of Jurisdiction to Issue Classwide Injunctive Relief

Respondents argue that 8 U.S.C. § 1252(f)(1) strips the Court of jurisdiction to issue the classwide injunctive relief Vazquez Perez seeks in this case, and the Court agrees. For the reasons stated below, the Court finds that Vazquez Perez seeks an injunction that enjoins or restrains the operation of 8 U.S.C. § 1229(b) on a classwide basis—an injunction that, pursuant to Section 1252(f)(1), this Court does not have jurisdiction to issue.

Whether the injunctive relief sought by Vazquez Perez "enjoin[s] or restrain[s] the operation" of Section 1229(b) such that this Court does not have jurisdiction under Section 1252(f)(1) to grant that relief is a question of statutory interpretation. The Court begins its inquiry with the text of the relevant statutes, Sections 1252(f)(1) and 1229(b). *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) ("Statutory interpretation, as we always say, begins with the text.").

Section 1252(f)(1) provides that

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1).

By its plain language, this provision limits lower courts' abilities to "enjoin or restrain the operation of the provisions of Part IV" of the immigration laws, which includes 8 U.S.C. §§ 1221–1232, "[r]egardless of the nature of the action or claim or of the identity of the party or parties bringing the action." However, the last clause of the statute contains an explicit carve out

allowing courts to continue to grant relief—including that which may enjoin or restrain the operation of Sections 1221–1232—on an individual basis. Accordingly, the Supreme Court has characterized Section 1252(f)(1) as "a provision prohibiting *classwide* injunctions against the operation of" Sections 1221–1232. *Nken v. Holder*, 556 U.S. 418, 431 (2009) (emphasis added); *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999) ("[Section 1252(f)(1)] prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221–123[2], but specifies that this ban does not extend to individual cases.").[3]

To determine the contours of the limitations Section 1252(f)(1) places on its jurisdiction, the Court must determine what constitutes "enjoining" or "restraining" the "operation" of Sections 1221–1232. In doing so, the Court is guided by the Supreme Court's admonition that Section 1252(f)(1) "is nothing more or less than a limit on injunctive relief," *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 481, as well as the title of the subsection within which Section 1252(f)(1) appears, "Limit on Injunctive Relief." In order to give effect to both "enjoin" and "restrain" as distinct forms of injunctive relief—and to avoid rendering either mere surplusage—the Court adopts the sensible interpretation of the First, Third, and Ninth Circuits that "enjoin" and "restrain" refer respectively to permanent and temporary injunctive relief. *See Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011); *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010); *Arevalo v. Ashcroft*, 344 F.3d 1, 7 (1st Cir. 2003). "Operation" is, in turn, defined as a "method or manner of functioning." *Operation*, Merriam-Webster Online Dictionary (Aug. 30, 2019), https://www.merriam-webster.com/dictionary/operation. The relevant inquiry, then, is whether the temporary injunctive relief Vazquez Perez seeks on a

---

[3] The statute appears to exclude the Supreme Court entirely from its jurisdictional prohibition.

classwide basis would enjoin or restrain the method or manner of functioning of Sections 1221–1232.

Having so delineated the contours of the limits on classwide injunctive relief in Section 1252(f)(1), the Court finds that the requested injunction would enjoin or restrain, at a minimum, the operation of Section 1229(b). That section provides that an initial master calendar "hearing date shall not be scheduled earlier than 10 days after the service of the notice to appear." 8 U.S.C. § 1229(b)(1). By its terms, this provision sets a time before which the initial master calendar hearing may not be scheduled but provides no time beyond which the initial master calendar hearing cannot be scheduled. In other words, it prescribes a floor but no ceiling with respect to the timing of initial master calendar hearings. Because Congress, in its judgment, chose not to mandate a statutory ceiling, an injunction imposing one where the statute is *silent* would displace that judgment in a way that would enjoin or restrain the method or manner of Section 1229(b)'s functioning. Accordingly, Section 1252(f)(1) strips this Court of jurisdiction to issue the injunction Vazquez Perez seeks here.

This conclusion is in accord with the Sixth Circuit's decision in *Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018), in which that court found that a classwide injunction that "created out of thin air a requirement for bond hearings that does not exist in the statute" restrained the operation of the statute. *Id.* at 879. It is, however, contrary to the conclusion reached by other courts. *See, e.g.*, *Padilla v. I.C.E.*, 354 F. Supp. 3d 1218, 1231–32 (W.D. Wash. 2018). But these courts have relied, in reaching a contrary conclusion, on one or more of the counterarguments that are addressed and rejected below.

### 1. The Court Does Not Find Vazquez Perez's Counterarguments Persuasive

Vazquez Perez seeks to evade the conclusion that the plain language of the statute compels in three ways. First, he argues that if Section 1252(f)(1) strips the Court of jurisdiction to issue the requested injunction, it amounts to a stripping of habeas jurisdiction without the requisite clear statement. Second, he argues that even if Section 1252(f)(1) does bar this Court from issuing classwide injunctive relief in some cases, it does not bar it from doing so in cases in which all members of the class are in removal proceedings. Finally, he argues that the injunction he seeks does not "enjoin or restrain the operation of" any provision of Sections 1221–1232, but rather enjoins only statutory and constitutional violations thereof. In other words, he argues, the requested injunction does not enjoin the *proper* operation of Sections 1221–1232. The Court finds each of these arguments unpersuasive.

### a) Section 1252(f)(1), As Interpreted, Does Not Strip the Court of Habeas Jurisdiction without a Clear Statement

First, Vazquez Perez argues that Section 1252(f)(1) strips habeas jurisdiction without the requisite "'clear and unambiguous statement' of an intention to restrict habeas court authority." Dkt. No. 107 at 3 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001)). To address this argument, the Court first accepts without deciding the general availability of classwide habeas relief in light of the Respondents' stipulation to class certification. *See supra* Section I.C.

Even with that premise accepted, the Court need not decide whether Section 1252(f)(1) provides a sufficiently clear habeas-stripping statement because Section 1252(f)(1)'s elimination of lower courts' ability to issue habeas relief on a *classwide* basis does not implicate the clear statement rule. Rather, the clear statement rule requires "a clear statement of congressional intent to *repeal* habeas jurisdiction." *St. Cyr*, 533 U.S. at 298 (emphasis added). In other words, the clear statement rule applies where a statute seeks to eliminate a court's habeas jurisdiction entirely. However, the clear statement rule is inapplicable where, as here, the statute does not

eliminate habeas jurisdiction. Indeed, Section 1252(f)(1) does not bar petitioners from seeking writs of habeas corpus or even from combining a petition for habeas corpus with a request for injunctive relief; it simply requires them to do so by way of an individual—as opposed to a classwide—petition. A statute that limits a court's habeas jurisdiction to the consideration of individual petitions does not, by its terms, eliminate habeas jurisdiction—which remains available to individual petitioners—and thus does not implicate the clear statement rule.[4]

The Second Circuit cases Vazquez Perez cites in support of his argument to the contrary are inapposite, because in each case the Second Circuit had before it statutes that potentially foreclosed *all* habeas jurisdiction. *See Ragbir v. Homan*, 923 F.3d 53, 73–74 (2d Cir. 2019) (discussing Section 1252(g), which "foreclosed *all* grants of jurisdiction" including the "minimum scope of the privilege of the writ of habeas corpus" (emphasis added)); *Liu v. INS*, 293 F.3d 36, 40–41 (2d Cir. 2002) (finding that "habeas jurisdiction under § 2241 was not *repealed* by AEDPA and IIRIRA" for either criminal or non-criminal aliens (emphasis added) (quoting *St. Cyr*, 533 U.S. at 314)). Section 1252(f)(1), in contrast, expressly places individual petitions outside of its jurisdiction-stripping scope and therefore preserves, not repeals, the writ of habeas corpus. The clear statement rule simply does not apply where a statute only modifies the form in which habeas relief is available (i.e., by individual or classwide adjudication). Though there is other non-binding authority to the contrary, the Court does not find those cases persuasive for the reasons articulated above. *See, e.g.*, *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

> **b) Section 1252(f)(1) Bars Classwide Injunctive Relief for a Class of Individuals, All of Whom Removal Proceedings Have Been Initiated Against**

---

[4] Moreover, as discussed above, Section 1252(f)(1) excludes the Supreme Court from its operation and thus appears to limit only *lower* courts' ability to grant classwide habeas relief.

13

Second, Vazquez Perez argues that Section 1252(f)(1) does not bar classwide injunctive relief where all of the members of the class are in removal proceedings. Dkt. No. 107 at 5–7. This argument is based on the statute's individual carve out, which allows courts to grant injunctive relief, even that which may enjoin or restrain the operation of Sections 1221–1232, "to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). As an initial matter, the class Vazquez Perez proposes is, in fact, broader than aliens against whom removal proceedings have been initiated—it includes not only those against whom removal proceedings have not yet been initiated, but also those who have not even been *arrested* by ICE. See Dkt. No. 3 at 1. Furthermore, the Court does not read the statute's limited exception allowing injunctive relief "for [an] individual alien against whom proceedings under such part have been initiated" as an exception allowing for injunctive relief for a class of such aliens. As the Sixth Circuit concluded, this argument does "violence to the text of the statute," by "reading out the word 'individual' before 'alien,'" *Hamama*, 912 F.3d at 877, and, if accepted, would create an exception that would swallow the rule. The Court thus concludes, in accord with *Hamama*, that the most sensible reading of the provision is that it prohibits granting *any* classwide injunctive relief against the operation of Sections 1221–1232, regardless of the composition of the class. *See id.* at 877–78; *see also Nken*, 556 U.S. at 431 (characterizing Section 1252(f)(1) as "a provision prohibiting classwide injunctions against the operation of" Sections 1221–1232). Though other courts have found to the contrary, the Court does not find this non-binding authority persuasive for the reasons articulated above. *See, e.g., Marin*, 909 F.3d at 256 ("All of the individuals in the putative class are 'individual[s] against whom proceedings under such part have been initiated' and are pursuing habeas claims, albeit as a class, which nowhere appear affected by § 1252(f)(1).").

*Califano v. Yamasaki*, 442 U.S. 682 (1979), cited by Vazquez Perez, does not compel the

Court to conclude otherwise. In that case, the Supreme Court found class relief available under

42 U.S.C. § 405(g) because there was no "direct expression by Congress of its intent to depart

from the usual course of trying 'all suits of a civil nature' under the [Federal Rules of Civil

Procedure]." *Id.* 700. However, Section 1252(f)(1) is readily distinguishable from the provision

at issue in *Yamasaki*, which provided generally for judicial review.[5] Section 1252(f)(1) is not a

general judicial review provision and, as discussed above, its entire structure manifests a direct

expression of Congress' intent to depart from the usual course and preclude lower courts from

issuing any classwide injunctive relief. Indeed, the statute's entire purpose is to preclude

injunctive relief except with respect to "an individual alien." 8 U.S.C. § 1252(f)(1). This direct

expression of intent is further reinforced by the first clause of the provision, which provides that

no court shall have jurisdiction to enjoin or restrain the operation of Sections 1221–1232

"*regardless of the nature of the action* or claim or of *the identity of the party or parties* bringing

the action." *Id.* § 1252(f)(1).

> ### c) The Court May Not, Consistent with Section 1252(f)(1), Grant Classwide Injunctive Relief for Constitutional Violations Where Doing So Would Enjoin or Restrain the Operation of Sections 1221–1232

Finally, Vazquez Perez argues that Section 1252(f)(1) "does not bar injunctions that do

not conflict with the detention statutes but that prohibit policies and practices that violate

constitutional, statutory, or other enforceable protections because such injunctions do not 'enjoin

or restrain the operation of' any provisions of the Immigration and Nationality Act." Dkt. No.

---

[5] The statute at issue in *Yamasaki* reads, in pertinent part, "Any individual, after any final decision of the Secretary made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g).

107 at 10. In other words, he argues that Section 1252(f)(1) does not preclude courts from issuing classwide injunctions where such injunctions only enjoin or restrain violations of Sections 1221–1232 or constitutional violations. An injunction of that nature, he argues, would not enjoin or restrain the operation of those provisions.

With respect to claims that defendants are acting in violation of a provision within Sections 1221–1232, the Court agrees that Section 1252(f)(1) may not strip it of jurisdiction to enjoin explicit violations of Sections 1221–1232 as written, because such an injunction cannot be said to "enjoin or restrain" the operation of those provisions.[6] Accordingly, if, for example, Section 1229(b) required all initial master calendar hearings to be held within 21 days of arrest and the Executive Office of Immigration Review adopted a policy of providing such hearings within a month of arrest, the Court may have jurisdiction to issue an injunction on a classwide basis requiring compliance with the statute as written. Indeed, several of the cases that adopt Vazquez Perez's argument as to the meaning of enjoin or restrain involve alleged statutory, rather than constitutional, violations. *See, e.g.*, *Damus v. Nielsen*, 313 F. Supp. 3d 317, 328 (D.D.C. 2018); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 183–84 (D.D.C. 2015). However, Vazquez Perez is not seeking a classwide injunction to remedy any alleged statutory violations of Sections 1221–1232.

Vazquez Perez also insists, though, that this Court may grant the requested injunction even in the absence of alleged statutory violations in order to enjoin alleged *constitutional* violations. His argument is that because such an injunction does not enjoin or restrain the

---

[6] Indeed, the Supreme Court has suggested that classwide injunctive relief enjoining the government from violating its own statutes as written may not be barred by Section 1252(f)(1). *See Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018) (noting that the Court of Appeals "held that [Section 1252(f)(1)] did not affect its jurisdiction over respondents' *statutory* claims because those claims did not seek to enjoin the operation of the immigration detention statutes, but to enjoin conduct . . . not authorized by the statutes") (quotation omitted).

*proper*, i.e. constitutional, operation of the immigration statutes, it does not fall within Section 1252(f)(1)'s ambit. Dkt. No. 107 at 10–11. Some courts have so held. *See, e.g.*, *Padilla*, 354 F. Supp. at 1231–32; *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1205 n.19 (N.D. Cal. 2017). However, the Court does not find this non-binding authority persuasive. While Section 1252(f)(1) may not affect the Court's jurisdiction over statutory claims where "those claims did not seek to enjoin the operation of the immigration detention statutes, but to enjoin conduct . . . not authorized by the statutes, . . . [t]his reasoning does not seem to apply to an order granting relief on constitutional grounds." *Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018) (quotation omitted). Indeed, as discussed above, an order granting classwide relief on constitutional grounds—and requiring initial master calendar hearings to be held within a prescribed time period—*would* restrain the operation of at least Section 1229(b), which provides no such time period. This Court is stripped of its jurisdiction to grant such relief by Section 1252(f)(1) notwithstanding the argument that classwide relief is needed to address constitutional violations. A conclusion to the contrary would allow an end-run around Section 1252(f)(1)'s bar on classwide injunctive relief wherever a party could plausibly allege constitutional violations, and would carve out another exception to the limits on injunctive relief in Section 1252(f)(1) that would swallow the rule in the mine-run of cases.

In sum, in accord with the plain language of the statute—and finding none of Vazquez Perez's arguments to the contrary persuasive—the Court concludes that because the injunctive relief Vazquez Perez requests would restrain the operation of Section 1229(b) on a classwide basis, the Court is stripped of its jurisdiction to grant such relief by Section 1252(f)(1).

## B. Section 1252(f)(1) Does Not Strip the Court of Jurisdiction to Issue Declaratory Relief

Nonetheless, Section 1252(f)(1) does not strip this Court of jurisdiction to issue declaratory relief on a classwide basis. In *Nielsen v. Preap*, 139 S. Ct. 954 (2019), a plurality of the Supreme Court recently clarified that the statute's jurisdictional bar does not prohibit classwide declaratory relief. In that case, the Supreme Court reviewed a lower court decision that certified a habeas class of all aliens in California "who are or will be subjected to mandatory detention under 8 U.S.C. § 1226(c)," and then granted the class both declaratory relief and a preliminary injunction. *Id.* at 961 (quotation omitted). The Government appealed and made the same argument it does here: "that under 8 U.S.C. § 1252(f)(1), th[e] [district] court lacked jurisdiction to enter the requested injunction." *Id.* at 962 (plurality opinion). A plurality of the Supreme Court, however, concluded that it "need not decide" this issue because, irrespective of "[w]hether the [lower] court had jurisdiction to enter such an injunction," the "District Court *had jurisdiction to entertain the plaintiffs' request for declaratory relief.*" *Id.* at 962 (emphasis added). In other words, a plurality of the Supreme Court has stated that § 1252(f)(1) does not prohibit district courts from granting classwide declaratory relief. *Id.*; *accord Jennings*, 138 S. Ct. at 851 (directing the Ninth Circuit to reconsider whether it has jurisdiction under Section 1252(f)(1) to grant classwide injunctive relief or whether "it may issue only declaratory relief" pursuant to that provision); *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 481 ("By its plain terms, and even by its title, [8 U.S.C. § 1252(f)(1)] is nothing more or less than a limit on *injunctive relief*. It prohibits federal courts from granting classwide *injunctive relief* against the operation of §§ 1221–123[2] . . . ." (emphasis added)).

Even if this were not binding Supreme Court authority on point, the Court would reach the same conclusion because the statute's plain text compels this result. To start, the provision itself does not mention declaratory relief. It speaks only of injunctions that "enjoin" on a

permanent basis or "restrain" on a temporary one the operation of Sections 1221–1232. If Congress had wanted to use this provision to also strip courts of jurisdiction to grant declaratory relief, it could have done so. Indeed, in a separate provision of the very same statute, Congress stripped courts of jurisdiction to "enter *declaratory*, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 235(b)(1) . . . ." 8 U.S.C. § 1252(e)(1)(A) (emphasis added). Congress could have included the same language in Section 1252(f)(1), but it chose not to. This Court agrees with the Ninth Circuit that "'[e]njoin or restrain' should not be read to include declaratory relief when Congress could easily have included 'declaratory relief' explicitly had it chosen to do so." *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010); *see also Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011).

### C. The Court Cannot Issue Preliminary Declaratory Relief Because No Such Relief Exists

Though the Court is not barred by Section 1252(f)(1) from issuing declaratory relief, it nonetheless cannot issue the preliminary declaration Vazquez Perez seeks in this motion. As a sister District in this Circuit noted, "there is no clear precedent authorizing . . . preliminary declaratory relief," and the Court finds that no such relief exists. *Riddick v. Semple*, Case No. 3:18-cv-313, 2019 WL 851382, at *3 (D. Conn. Feb. 22, 2019).

The Court understands the request for preliminary declaratory relief made by Vazquez Perez in this motion to be seeking a preliminary declaration of rights that would precede a final determination at a later stage of this litigation, with entitlement to such relief at this juncture turning on whether he meets the preliminary injunction factors. *See* Dkt. No. 96 at 14:19–21 (The Court: "You still have to meet the preliminary injunction factors [for a preliminary declaration], right?" Mr. Hodgson: "Yes, your Honor.").

This raises the question whether, as a procedural matter, preliminary declaratory relief is available. There is disagreement between courts within this Circuit and among courts without as to this question. Though at least one court in this Circuit has found preliminary declaratory relief to be an available remedy, *see Merrill Lynch, Pierce, Fenner & Smith v. Doe*, 868 F.Supp. 532, 535–36 (S.D.N.Y. 1994), many others to have considered the issue have questioned, without definitively deciding, whether such relief exists, s*ee, e.g.*, *Rheaume v. Pallito*, Case No. 5:11-cv-72, 2012 WL 787404 (D. Vt. Mar. 8, 2012) ("Preliminary declaratory relief, *if it exists*, is subject to the same stringent standard [as preliminary injunctive relief]." (emphasis added)); *Murray v. New York*, 604 F. Supp. 2d 581, 587 (W.D.N.Y. 2009) ("As to plaintiff's claim for preliminary declaratory relief, it is not entirely clear that such relief is *ever* available."). Likewise, while the Third Circuit has found that parties may obtain preliminary declaratory relief under some circumstances, *Disabled in Action of Pennsylvania v. SEPTA*, 539 F.3d 199, 215 (3d Cir. 2008), the Seventh Circuit has noted, without deciding for itself, that there is disagreement as to whether "such a creature" exists, *Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 276 (7th Cir. 1992).

In resolving this unsettled question of law in the negative, the Court is guided by the Supreme Court's suggestion that "prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction," *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975), as well as the text of the Declaratory Judgment Act, Federal Rule of Civil Procedure 65, and the general prohibition on issuing advisory opinions.

Preliminary declaratory relief appears nowhere in federal statutes or the Federal Rules of Civil Procedure and is inconsistent with—and therefore not explicitly allowed by—the statutes and rules governing related forms of relief, including declaratory judgments and preliminary

injunctions. A preliminary declaration is, by its nature, *not* a declaratory judgment. The Declaratory Judgment Act provides that a federal court, "upon the filing of an appropriate pleading, *may declare the rights and other legal relations* of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). It further provides that "[a]ny such declaration shall have the force and effect of a *final judgment or decree* and shall be reviewable as such." *Id.* (emphasis added). A preliminary declaration, however, does not declare, but rather only *provisionally* declares the rights of interested parties subject to a subsequent final determination. *Merrill Lynch*, 868 F.Supp. at 535. Because a preliminary declaration anticipates a final declaratory judgment—and, indeed, requires one to settle the rights and legal relations of the interested parties—it does *not* have the force and effect of a final judgment or decree.[7] A preliminary declaration is likewise not encompassed by the relief contemplated in Federal Rule of Civil Procedure 65 because "[a] preliminary injunction or temporary restraining order must require or restrain acts by people and may bind only the parties or their 'officers, agents, servants, employees, and attorneys,' or anyone 'in active concert or participation' with those people." *Fisher v. Cook*, Case No. 2:19-cv-02034, 2019 WL 1787338, at *1 (W.D. Ark. Apr. 24, 2019) (quoting Fed. R. Civ. P. 65(d)). Because "[a] general preliminary declaration about what the law is *does not specifically bind anyone*," such relief is not authorized by Rule 65. *Id.* (emphasis added).

Preliminary declaratory relief is problematic for the additional reason that it simultaneously provides the parties with too little and too much relief at this early stage of the litigation. Because a preliminary declaration—unlike a final declaration—does not specifically

---

[7] Nor is a preliminary declaration immediately reviewable, though by statute, both final declaratory judgments and preliminary injunctions are. *See* 28 U.S.C. § 2201(a); 28 U.S.C. § 1292(a)(1).

bind anyone, it is more akin to an advisory opinion, which the Court is precluded from issuing by history and the implicit policies embodied in Article III. *See Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("[I]t is quite clear that 'the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.'" (quoting C. Wright, Federal Courts 34 (1963))). On the other hand, where, as here, a party seeks preliminary declaratory relief with respect to the "ultimate issue for determination," a "preliminary ruling in its favor would," in effect, "grant it full relief on that issue." *Alpha Capital Anstalt v. Ness Energy Int'l, Inc.*, Case No. CIV-10-1218-D, 2011 WL 232393, at *12 (W.D. Okla. Jan. 24, 2011). Under those circumstances, preliminary declaratory relief would allow litigants to wrest from the Court a final resolution that defies not only this Court's Article III powers but also the Declaratory Judgment Act. *Id.*

In light of the problems inherent in preliminary declaratory relief and the fact that it is not provided for by either rule or statute and appears only rarely in the case law, the Court is persuaded that there "is [not] such a creature." *Original Great Am. Chocolate Chip Cookie Co.*, 970 F.2d at 276. The Court thus denies Vazquez Perez's request for preliminary declaratory relief.

*　　*　　*　　*　　*

Accordingly, Vazquez Perez's motion for preliminary injunctive or declaratory relief is DENIED because the Court does not have jurisdiction to issue any injunctive relief on a classwide basis, and it cannot issue preliminary declaratory relief as no such relief exists. However, Section 1252(f)(1) does not bar the Court from issuing final declaratory relief on a classwide basis, and thus the Court does have subject-matter jurisdiction to enter a final judgment in this case. The Court intends to do so as expeditiously as possible and requires the

parties to meet and confer as to what additional procedural steps are necessary to achieve that end.

The Court also notes in conclusion that the denial of the class-wide relief sought in this motion is not meant to suggest a lack of seriousness of the issues raised in the underlying claims. Indeed, Respondents have conceded that members of this conditional class have a constitutional right to a prompt initial master calendar hearing. Dkt. No. 96 at 54:9–20. Between now and final resolution of these claims, the Court fully expects that Respondents will continue to ensure, consistent with Respondents' Counsel's representations to the Court at oral argument on this motion on April 8, that no class members will face any longer than a 17-day delay between filing of the NTA and initial master calendar hearing. Dkt. No. 96 at 47:11–50:25. Counsel for Respondents shall promptly notify the Court of any instances of failing to adhere to those representations. The Court also requires Respondents to provide continuing monthly updates on data regarding median wait times between arrest and scheduling of initial master calendar hearings.

## V. CONCLUSION

For the reasons articulated above, Vazquez Perez's motion for preliminary injunctive or declaratory relief is DENIED.

Respondents are ORDERED to notify the Court if any individuals have waited longer than 17 days between the filing of the NTA and the initial master calendar hearing.

Respondents are also ORDERED to continue to provide monthly updates on data regarding median wait times between arrest and scheduling of initial master calendar hearings.

The parties are ORDERED to meet and confer as to what proposed additional procedural steps are necessary, if any, before the Court can rule on the request for a final declaratory

judgment. Within one week of the date of this Opinion and Order, the parties shall submit a joint letter with their proposal. If no agreement is reached, the parties should each provide their respective proposals. The parties shall also continue to discuss settlement during their meet and confer.

This resolves Dkt. Nos. 3 and 50.

SO ORDERED.

Dated: September 30, 2019
      New York, New York

ALISON J. NATHAN
United States District Judge